

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2005

# Rieser v. Standard Life Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3128

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Rieser v. Standard Life Ins Co" (2005). *2005 Decisions*. Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-3128

———

LORETTA RIESER,
Appellant

v.

STANDARD LIFE INSURANCE CO;
GROSS-GIVEN MANUFACTURING CO;
CANADA LIFE ASSURANCE CO

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-05040)
District Judge: Honorable Berle M. Schiller

———

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2005

Before: SLOVITER, SMITH, and STAPLETON, Circuit Judges.

(Filed : December 15, 2005)

———

OPINION

———

SLOVITER, Circuit Judge.

Loretta Rieser appeals the District Court's orders dismissing her claim against

Canada Life Assurance Company ("Canada Life"), dismissing Counts VI through VIII of

the Amended Complaint as preempted, rejecting her demand for a jury trial, and granting

summary judgment on her claim under the Employee Retirement Income Security Act

(ERISA) to the remaining defendants, Standard Life Insurance Company ("Standard")[1]

and Gross-Given Manufacturing Company ("Gross-Given").

## I.

Rieser's deceased husband David Rieser, was an active employee of Gross-Given

from February 19, 1952 until January 28, 1998, when he went on disability due to

emphysema. While employed at Gross-Given, Mr. Rieser participated in an employee

benefit program which provided health insurance, life insurance and disability insurance

through Standard.

In the fall of 1997, Mr. Rieser met with David Riccio, a Gross-Given employee, to

discuss his disability benefits which was memorialized in a memorandum dated

November 6, 1997. It provided in pertinent part as follows:

> During the disability period, Gross Given continues your health, life
> insurance. This coverage would be the same as it is when you begin your
> disability, including family coverage. Premiums for the insurance would
> continue to be paid by Gross Given.

---

[1] Appellant has settled her claim with Standard and therefore
they are no longer a party to this appeal.

App. at 146.

The memorandum further explained that Mr. Rieser would receive disability payments from Standard for as long as he remained disabled, but the payments would terminate when he reached the age of 65 or if he chose to access his retirement benefits.

On October 14, 1998, Standard informed Mr. Rieser that premium payments would have to continue to be made in order for his life insurance coverage to remain in effect and that he should contact Gross-Given for information on the premium payments. Gross-Given continued to make premium payments to Standard until October 31, 2000, when it changed insurance carriers to Canada Life, which provided the same life insurance coverage as the Standard policy did. The Canada Life policy was made expressly applicable to employees who were "actively at work" at its inception or who later became "actively at work" again. App. at 36.

Standard contacted Mr. Rieser on numerous occasions to notify him that his disability payments would terminate on November 28, 2001. Standard last contacted Mr. Rieser on November 8, 2001 to inform him that his disability payments would end within the next two weeks and that he should refer to their earlier correspondence for information regarding his claim status. After Mr. Rieser died on November 13, 2002, Mrs. Rieser submitted claims for $55,000 in life insurance benefits to Standard and Canada Life, which were both denied.

She then filed suit in the District Court for the Eastern District of Pennsylvania

against Gross-Given, Standard, and Canada Life alleging ERISA violations and bad faith

under Pennsylvania law. The Complaint further alleged fraud against Gross-Given. On

May 25, 2004, the District Court entered an order dismissing the state law bad faith

claims and fraud claim on the ground that they were preempted by ERISA, dismissing the

ERISA claims against Canada Life, and granting the motion of Standard and Canada Life

to strike plaintiff's demand for a jury trial.

On June 24, 2004, the Court entered an order granting summary judgment for

Standard and Gross-Given on Mrs. Rieser's remaining claims. The Court explained that

summary judgment was appropriate as to the claims against Gross-Given because Gross-

Given had no authority under the Standard policy to administer benefits and had never

misrepresented any of the terms of the policy to Mr. Rieser. Moreover, Gross-Given was

obliged to make premium payments on behalf of Mr. Rieser only until the end of his

disability period, which ended approximately a year before he died. Therefore, Mr.

Rieser was not covered under any policy at the time of his death. Both orders are the

subject of this appeal.

## II.

The District Court dismissed Mrs. Rieser's claim alleging that Canada Life had

violated ERISA because the Court found that Mr. Rieser was never covered under any

Canada Life insurance plan. The District Court stated that:

> [t]he clear and unambiguous terms of the Canada Life insurance
> policy state that when the policy went into effect on November

4

1, 2000, it applied only to those employees who were "actively at work" on the effective date or who later became full time employees "actively at work" after the effective date.

App. at 5.

Mrs. Rieser does not dispute that her husband was never "actively at work" after the Canada Life policy became effective but she argues that he was nonetheless covered under a Canada Life policy. There is no record basis for this assertion because Mr. Rieser was never eligible for coverage under the Canada Life policy. He was not "actively at work" when that policy became effective and he never actively returned to work. In fact, Mr. Rieser stopped working nearly two and a half years before the Canada Life policy became effective.[2]

The District Court also held that Mrs. Rieser's common law fraud claim against Gross-Given was preempted by ERISA § 514(a), 29 U.S.C. § 1144(a) (2004), because "fraud clearly 'relates to' the denial of benefits under an employee benefit plan." App. at 7. We agree. A law "relates to" an employee benefit plan if it "has a connection with or reference to such a plan." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96-97 (1983). Because Mrs. Rieser's claim requires the court to examine the terms of the employee benefit plan and any representations made about that plan, it is preempted by ERISA. It follows that the District Court did not err in striking Mrs. Rieser's demand for a jury trial.

_____

[2] Mrs. Rieser concedes that her bad faith claim is precluded by our decision in Barber v. UNUM Life Ins. Co. of America, 383 F.3d 134 (3d Cir. 2004).

5

See e.g., Cox v. Keystone Carbon Co., 894 F.2d 647, 649 (3d. Cir 1990).

**III.**

In granting summary judgment to Gross-Given on Mrs. Rieser's claim against Gross-Given for misrepresentations under ERISA, the District Court held that Gross-Given did not make any affirmative misrepresentations or provide any misleading information about Mr. Rieser's life insurance coverage. The District Court concluded that the memorandum sent to Mr. Rieser on November 6, 1997, three years before the change in insurance carriers from Standard to Canada Life, was "an accurate description of the compensation to which Mr. Rieser would be entitled" and did "not provide any information about the length of the long term disability period and certainly does not suggest that the disability period is boundless." App. at 22. Also, the letters received by Mr. Rieser advised him that Gross-Given would continue to pay his life insurance premiums during the disability period and he was advised by letters when his disability period would end.

Further, "[a]n ERISA fiduciary is under no obligation to offer precise predictions about future changes to its plan. Rather, its obligation is to answer participants' questions forthrightly." Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993). Mr. Rieser's disability period ended on November 28, 2001 and he died on November 13, 2002. The District Court's conclusion that there were no misrepresentations is supported by the record. We will therefore affirm its order dismissing various claims and granting

6

summary judgment.